Phillip Paul MOORE Appellant,

v.

COMMONWEALTH of Kentucky Appellee.

No. 2004–SC–0572–MR.

Supreme Court of Kentucky.

March 17, 2005.

As Modified April 21, 2005.

Ashley Rogers Dye, Lexington, KY, Fred E. Peters, Lexington, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, for Appellee.

## OPINION

This appeal is from a judgment based on a conditional guilty plea in the Fayette Circuit Court which convicted Moore of four counts of theft of identity of another without consent, one count of second-degree criminal possession of a forged instrument, one count of theft of identity without consent, and two counts of fraudulent use of credit cards—over $100 in a six-month period. He was sentenced to a total of twenty years in prison.

Moore presents two issues: whether the search warrant affidavit upon which the search warrant issued was based failed to establish probable cause to search his home; and, if the warrant provided a sufficient nexus between criminal activity and the address supplied or if information not provided by the detective to the magistrate had an effect on whether the good faith exception applies to allow admission of the fruits of the search of his home.

The trial judge denied the motion to suppress. Although the trial judge determined that the affidavit failed to establish probable cause for a warrant, she relied on the good-faith exception pursuant to *Crayton v. Commonwealth*, 846 S.W.2d 684 (Ky.1992), to refuse to suppress the inculpatory evidence seized from Moore because the affidavit was made in good faith and the police officer had an objectively reasonable belief in the sufficiency of the warrant and the probable cause determination. This appeal followed.

## I. Good Faith Exception

The principal issue argued by Moore is whether the trial judge correctly determined that the good faith exception to the exclusionary rule was applicable so as to preclude the suppression of evidence seized from the residence of the defendant.

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), determined that evidence seized by police should not be excluded if it is obtained pursuant to a search warrant which may later be determined to be flawed if the officers executing the warrant had an objectively reasonable good-faith belief in the probable cause determination by the magistrate and the sufficiency of the warrant. In such cases, the evidence will not be suppressed.

There are some further considerations that limit application of the good faith exception. *Leon, supra,* went on to state that suppression of evidence is appropriate despite availability of the exception where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. Likewise, availability of this good faith exception vanishes where the judge abandoned his detached and neutral judicial role, and the affidavit is so lacking in indicia of probable cause as to render official belief in its official existence entirely unreasonable and that the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

*Crayton v. Commonwealth, supra,* essentially adopted the holding in *Leon*, stating that the application of a good faith exception to the warrant requirement, as articulated in *Leon*, does not violate Section Ten of the Kentucky Constitution.

■ Here, there were no reasonable grounds to believe that the affidavit supporting the warrant was lacking in indicia of probable cause. There was no showing that the officer omitted facts deliberately or recklessly and the inclusion of omitted facts would have bolstered the showing of probable cause rather than undermined it. The warrant was not so facially deficient that an executing officer could not reasonably presume it to be valid. The affidavit in question sets out numerous details regarding the criminal enterprise. Considering all of the circumstances, including information known to the police officer and not set forth in the affidavit, it is readily apparent that the officer acted in good faith and in accordance with the exception. The officer testified at length in the suppression hearing and indicated that prior to preparing the affidavit, she had visited the premises and conducted both surveillance and investigation into the situation. The landlord had advised her that Moore rented an apartment there and she observed a repossession of his vehicle outside the residence. She testified that she had no reason to believe that Moore lived or worked anywhere else other than the address that she was investigating.

■ For the purposes of determining the availability of the *Leon* exception in this case, the trial judge properly considered matters outside the affidavit. *Crayton* tolerates consideration of matters outside the affidavit in a good-faith determination. *United States v. Martin*, 297 F.3d 1308 (11th Cir.2002), states that the majority of federal circuits that have examined this question find that a reviewing court may look outside the four corners of the affidavit to determine whether an officer acted in good faith. *United States v. Simpkins*, 914 F.2d 1054 (8th Cir.1990), stated that when assessing the objective good faith of police executing a warrant, we must look to the totality of the circumstances, including any information known to the officer but not presented to the issuing magistrate.

## II. Search Warrant

The affidavit in support of the search warrant stated that a local bank reported a fraudulent account creation using the following information: name of Phillip P. Moore, 3690 Rabbits Foot Trail Apt. # 7, Lexington, KY 40503, and the account was set up using fraudulent information. The social security number used to open the account does not belong to Phillip P. Moore but belongs to [an individual] in Las Vegas, Nevada. The account was funded with "a computer generated check drawn on the account of Justice Enterprises, Stella Justice, President, Harold, KY, 41635." The bank employee-informant also reported that this check not only was returned for Not Sufficient Funds (NSF), but that the drafted bank reported that the account was a personal account, not a business account. In addition, that bank reported to the informant that several other checks bearing the Justice Enterprises business name had been presented to it, all of which had been returned NSF.

In addition to the bank account creation, the affidavit described two fraudulent car purchases made through this account scam. The first was the purchase of a Chevrolet Trailblazer, described by its VIN number, description, and license plate number, that had been obtained through a loan from a third bank. This loan was paid using checks from the account made with the informant-bank. Because of the NSF returns on the payments, repossession had already begun on this vehicle. The second vehicle was a 2003 Jaguar, described by VIN number and license plate number. Moore used the fraudulent social security number in this transaction

as well. It further describes that he presented two checks for the transaction, one from the Justice Enterprises and the other from a yet another bank account named "Webworks Internet Specialists" with bank name and account number.

Among other things, the warrant was to search for "... computer graphic files which depict Social Security Cards, State Drivers License, and Federal, State or Local issued documents in a manner that could be used in the production of counterfeit documents". In addition, it sought "computer hardware, or computer software which can collect, analyze, display, store, transmit or print electronic or magnetic data used in the production of counterfeit documents". It described the apartment location with particularity and the vehicles with particularity.

Moore claims that the trial judge properly determined that this search warrant failed to establish probable cause to search his residence. In particular, he charges that the petition for the warrant failed to provide a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter,* 360 F.3d 591, 594 (6ᵗʰ Cir.2004) *citing United States v. Van-Shutters,* 163 F.3d 331, 336–7 (6ᵗʰ Cir. 1998). He contends that the affidavit was totally lacking in facts connecting the Defendant's residence to his alleged activities.

In *Carpenter, supra,* police investigation included flying a helicopter over the residence of the suspect. During the flight, the officers spotted numerous marijuana plants growing "near the residence". The search warrant petition failed to describe any distance from the plants to the residence but merely that a road connected the plants' location and the residence. It held that the search warrant as presented failed to state facts sufficient to induce a substantial basis for concluding that incriminating evidence would be found *there,*

in the residence, rather than someplace else. *See Id.,* at 594. It gave examples of what facts needed to be included. The government had conceded the point that the warrant in that case was not based on facts sufficient to conclude probable cause in that case.

 Our review of a search warrant must give great deference to the warrant-issuing judge's findings of probable cause and should not be reversed unless arbitrarily exercised. Courts should review the sufficiency of an affidavit underlying a search warrant in a commonsense, rather than hypertechnical, manner. The traditional standard for reviewing an issuing judge's finding of probable cause has been that so long as the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrong-doing, the Fourth Amendment requires no more. U.S.C.A. CONST. AMEND. 4. *United States v. Miller,* 314 F.3d 265, (6ᵗʰ Cir. 2002), *reh'g and suggestion for reh'g denied, cert. denied,* 539 U.S. 908, 123 S.Ct. 2261, 156 L.Ed.2d 121; *see also United States v. Ware,* 338 F.3d 476 (6ᵗʰ Cir.2003).

 Whether probable cause exists is determined by examining the totality of the circumstances. *United States v. Hammond,* 351 F.3d 765 (6ᵗʰ Cir.2003). Furthermore, the test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Miller, supra.* Probable cause does not require certainty that a crime has been committed or that evidence will be present in the place to be searched. *United States v. Hall,* 8 F.App. 529, (5th Cir.2001), *cert. denied,* 536 U.S. 961, 122 S.Ct. 2668, 153 L.Ed.2d 841 (2002).

The facts stated in the affidavit made it clear that Moore was conducting criminal activity, and the nature of that activity

involved the production of fraudulent instruments. The nature of the evidence is different from *Carpenter.*

■ In *Carpenter,* the contraband plants were themselves evidence of the crime and no information connecting the suspect to the crime was given. Nothing in the facts suggested that the suspect was the one growing the plants. No facts tied the plants or anything about the plants to any activity in the home sought to be searched. For that reason, probable cause was not supported. Here, a suspect is making fraudulent instruments and producing fraudulent identification to induce financial transactions. That suspect is known to be Moore and there are clear facts indicating at least three transactions in which Moore has committed crimes through fraud.

The bank-informant described at least one of the instruments used to fund the account as a "computer generated check". Unlike growing marijuana plants, it is known from this fact alone that a computer was used to make the instrument. It was highly likely that Moore used a computer or similar machine in the secrecy of his home. Thus, such a description of the instrument and the certainty that Moore was passing the instruments gave information that provided a nexus between the crime and the place.

This information, together with the numerous bank accounts and false social security number led to adequate suspicion that things used to make the fraudulent instruments as well as records and papers documenting the fraud would be found in his home and the vehicles. It was not certain, but there was a fair probability that such evidence would be found in these particular places, and that is all that the Fourth Amendment requires. *See Carpenter, supra,* at 594 *quoting Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct.

2317, 76 L.Ed.2d 527 (1983). This search warrant, under the totality of circumstances in this situation, was issued with substantial basis for probable cause.

■ The trial judge ruled that the warrant lacked probable cause, but based on the other testimony of the detective, did not suppress the evidence under the Leon exception for good faith. Given that the evidence is admitted either way, we affirm the trial judge for the correct result, albeit for the wrong reasons. *Cf. Newman v. Newman,* Ky., 451 S.W.2d 417, 420 (1970); *Commonwealth v. Congleton,* 267 Ky. 22, 101 S.W.2d 210 (1937).

The judgment of conviction is affirmed.

All concur, except Keller, J., who dissents because the affidavit in support of the search warrant for Appellant's apartment did not establish probable cause that evidence of counterfeiting would be present in the apartment.