Clifford D. RAWLS, Appellant

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2013–SC–000129–MR.

Supreme Court of Kentucky.

June 19, 2014.

Daniel T. Goyette, Cicely Jaracz Lambert, Office of the Louisville Metro Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General, William Bryan Jones, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, for appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Clifford D. Rawls, was convicted of manufacturing methamphetamine

while in possession of a handgun, possession of marijuana, and possession of a handgun by a convicted felon. He was also found to be a first-degree persistent felony offender. Rawls was sentenced to thirty-four years' imprisonment, and now appeals his conviction as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution. For the reasons stated herein, the Court affirms his convictions and sentence.

## I. Background

On March 23, 2011, Louisville Metro Police Detective Kevin McKinney received information that Rawls was manufacturing methamphetamine at a home located at 6307 Greenwood Road. Before visiting the address, McKinney conducted surveillance of the house. He saw a man visit and then quickly leave the home. As the man drove away, McKinney conducted a traffic stop of the man's car. The man told McKinney that he had sold pseudoephedrine to someone at the residence, and a search of the National Precursor Log Exchange (NPLEx) confirmed the man had purchased pseudoephedrine numerous times in previous days. Based on this information, McKinney and another officer proceeded to visit the home.

At the residence, the officers were met by Rawls and Tammy Linnig, Rawls's one-time girlfriend. At trial, McKinney testified that he told both Rawls and Linnig he was there to investigate claims of a methamphetamine lab, and that despite that information, both parties were very cooperative. Rawls allowed officers into the home and voluntarily surrendered a pocket knife and, later, a small bag of marijuana and rolling papers. Similarly Linnig allowed officers to search her purse and two hydrocodone pills were found.

Rawls was congenial and allowed the officers to look around the main floor of the home, except for his brother's locked bedroom. At that point, he asked McKinney to get a warrant if he wished to continue the search. Complying with Rawls's request, McKinney filled out an affidavit in support of a search warrant at the kitchen table of the residence and then left to obtain a search warrant.

In McKinney's absence, additional officers arrived to help secure the scene. Initially, the mood at the home remained calm. But that changed as an officer arrived at the home to deliver food to a colleague. As one of the attending officers answered the front door, he overheard Rawls tell Linnig he loved her followed by the sound of quick, running footsteps. Officers at the scene were unable to determine whether Rawls had left the residence or had hidden himself inside the home, and a search was undertaken. Rawls was eventually found barricaded in the basement of the residence with a weapon.

In the midst of this chaos, Detective McKinney arrived back at the scene with the search warrant. Realizing that the scene had devolved into a standoff, McKinney took steps to make phone contact with Rawls. At trial, McKinney testified that when he eventually spoke to Rawls via cell phone, his behavior had been erratic and his speech was slurred and incoherent. McKinney testified that Rawls told him that he should pick him up and take him to California to look for gold, that there was a methamphetamine lab in his basement and McKinney was going to have to clean up, and that McKinney should move behind a truck because Rawls had him in his sights, among other statements.

In the course of the night, Rawls also spoke to Detective Gary Bayline, a hostage negotiator. Bayline and Rawls spoke for approximately five hours on a recorded line. During this conversation, Rawls's mood remained erratic and his speech be-

came increasingly slurred. He admitted drinking and taking prescription pills, and made various threatening statements to Bayline and others Rawls could see from a window. Among other things, Rawls told Bayline that he was going to make a stand, and stated that he was a good marksman and would not miss. He also made statements that Bayline interpreted as relating to drug activity—specifically, he stated that "My shit was the best" and that he only had a gram or half a gram.

As McKinney and Bayline talked to Rawls, SWAT team members positioned themselves around the home. Two members of the team were positioned behind a tree in the backyard of the residence. As Bayline was on the phone with Rawls, he heard what sounded like the racking of a shotgun, and heard Rawls shoot a few rounds. The officers in the backyard confirmed that shots were fired from a basement window and at least two shots hit the tree they were positioned behind, but no one was injured.

In the course of the stand-off, SWAT utilized several tactics to force Rawls out of the home. First, the team cut off the electricity and lit the house with bright spotlights. As another strategy, the team deployed between twenty to forty canisters of tear gas into the house. Remarkably, this was not effective as evidenced by the fact that he did not leave the basement and that the sound of Rawls snoring could be heard on the recorded line.

A robot was also sent into the home to make contact with Rawls after he fell asleep. As a last resort, the team filled the basement with water in an attempt to flood Rawls out. This tactic was successful, and officers were able to apprehend Rawls on the main level of the home.

After Rawls was apprehended, a search of the home was conducted. At trial, there was testimony that a strong chemical smell, separate from the SWAT's gas munitions, was apparent in the home. Detective McKinney testified that amid the water in the basement he found reactionary vessels, smoker bottles, drain cleaner, Coleman fuel, salt, "liquid fire," lye, and receipts for lithium batteries. An Aquafina bottle, ammonium nitrate packages, and Pyrex measuring cups—one containing a blue powder and one containing a white powder—were also recovered from the basement. A microwave and electronic scale were also found, as were a number of firearms and ammunitions. Paint thinner was recovered from an upstairs room.

At trial, Rawls was convicted of manufacturing methamphetamine while in possession of a firearm, of being a convicted felon in possession of a hand gun, and possession of marijuana. He was found not guilty of two counts of attempted murder and trafficking in methamphetamine. During the penalty phase, Rawls was found to be a first-degree persistent felony offender. The jury recommended and the trial court sentenced Rawls to thirty-four years' imprisonment. This appeal followed.

## II. Analysis

On appeal, Rawls raises two allegations of error. First, he asserts the trial court erred by failing to instruct the jury on unlawful possession of a methamphetamine precursor as a lesser-included offense of manufacturing methamphetamine. And, second, he claims the trial court erred when it denied his motion for a suppression hearing and failed to suppress items seized pursuant to the search warrant. As part of his second argument, Rawls alleges that the affidavit supporting the warrant was facially deficient because it failed to establish probable cause, and that the search warrant failed to name the items to be seized with particularity. Each of

Rawls's arguments will be addressed herein.

**A. Lesser–Included Offense Instruction**

Rawls argues he was entitled to an instruction on unlawful possession of a methamphetamine precursor (possession of a precursor) as a lesser-included offense of manufacturing methamphetamine (manufacturing) because there was sufficient evidence that the jury could have found that he possessed pseudoephedrine with the intent to manufacture, which would constitute possession of a precursor, but was not guilty of manufacturing. Rawls preserved this issue for appeal by tendering instructions to the trial court.

Rawls's claim is primarily based on the testimony of his ex-girlfriend, Tammy Linnig. In relevant part, Linnig testified that she witnessed Rawls obtain pseudoephedrine from another individual on the day of his arrest and on other previous occasions, but claimed to have never witnessed him make methamphetamine. Rawls claims this testimony, in addition to Detective McKinney's trial identification of the powders in the recovered Pyrex dishes as pseudoephedrine and the fact that no methamphetamine was recovered from the home, entitles him to an instruction on unlawful possession of a precursor. This Court disagrees.

This Court has previously held that "[i]n a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Swan v. Commonwealth,* 384 S.W.3d 77, 99 (Ky. 2012) (citing *Taylor v. Commonwealth,* 995 S.W.2d 355, 360 (Ky.1999)); *see also* RCr 9.54(1). This mandate has been held to apply to lesser included offenses. *Swan,* 384 S.W.3d at 99.

But this Court has held "although a trial judge has a duty to prepare and give instructions on the whole law of the case, including any lesser included offenses which are supported by the evidence, that duty does not require an instruction on a theory with no evidentiary foundation." *Houston v. Commonwealth,* 975 S.W.2d 925, 929 (Ky.1998) (citations omitted). Rather, "an instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Id.* Or, as stated elsewhere, "to support a lesser included instruction the posture of the evidence must be such as to create a reasonable doubt as to whether the defendant is guilty of the higher or lower degree." *Swan,* 384 S.W.3d at 99 (quoting *Tipton v. Commonwealth,* 640 S.W.2d 818, 820 (Ky.1982)). Having reviewed the record, the totality of the evidence did not entitle Rawls to an instruction on possession of a precursor.

Rawls was convicted of manufacturing methamphetamine while in possession of a handgun under KRS 218A.1432 and KRS 218A.992. The Commonwealth's theory at trial was that Rawls had recently completed a "cook" of methamphetamine, or in the alternative, because no methamphetamine was recovered from the scene, that Rawls possessed the requisite chemicals and equipment as required by KRS 218A.1432(1)(b) and intended to manufacture methamphetamine. As evidence of this theory, the Commonwealth presented testimony about a reactionary vessel recovered from the scene that indicated a recent manufacture, additional chemicals and equipment recovered from the scene, as well as incriminating statements made

by Rawls in the course of hostage negotiations and testimony from Rawls's former girlfriend. As part of the evidence of the items recovered, the Commonwealth was able to provide testimony that many of the items found at the scene were recovered together in a bag in the basement where Rawls's bedroom was located. The clear import of the proof presented at trial was that Rawls had most likely already manufactured methamphetamine and would have continued to do so in the future.

■ Rawls's argument to this Court is essentially that the mere presence of pseudoephedrine at the scene of his arrest entitled him to an instruction on possession of a precursor. The Commonwealth acknowledges the same in its brief, but denies there was testimony about the presence of pseudoephedrine at the scene. But both parties are incorrect. While there was clear testimony about the presence of pseudoephedrine at the scene of Rawls's arrest (by Detective McKinney), the mere presence of pseudoephedrine at the scene will not always entitle a defendant to an instruction on possession of a precursor.

■ There is no dispute that possession of a precursor can be a lesser-included offense of manufacturing methamphetamine, but this does not remove the requirement, as noted above, that a lesser-included instruction is only appropriate when "the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Houston*, 975 S.W.2d at 929. In the present case, there was substantial evidence showing that Rawls had manufactured methamphetamine and was in possession of a number of chemicals (Coleman fuel, drain cleaner, "liquid fire," an opened cold pack) and pieces of equipment (pliers and tools to open lithium bat-

teries, plastic bottles, Pyrex dishes, HCL gas generators, and a scale). Admittedly, there was testimony that pseudoephedrine was found at the scene, but the presence of the drug alone cannot be viewed in a vacuum and must be viewed in conjunction with other evidence.

Rawls points to Linnig's testimony that she did not see him manufacture that day as support that he was entitled to the possession of a precursor instruction. But even by her testimony she was not at the home at the time the suspected manufacture occurred and stated she was familiar with the location the items were found. The simple fact is that no reasonable jury would have found Rawls not guilty of manufacturing methamphetamine but guilty of possession of a precursor under this proof. Here, the choice was all or nothing. As such, he was not entitled to an instruction on possession of precursor.

## B. Search Warrant

Rawls's second claim of error arises from the trial court's denial of his motion for an evidentiary hearing under Criminal Rule 9.78 on his motion to suppress. A brief factual and procedural review is necessary to address this argument.

As previously noted, Rawls refused to consent to a full search of the home. Detective McKinney filled out an affidavit to obtain a search warrant. In relevant part, the affidavit stated:

On the 23rd day of March, 2011 at approximately 1820 p.m. affiant received information from/observed:

Detectives received information that Clifford Rawls was manufacturing meth @ 6307 Greenwood Road Louisville Ky 40258

Acting on the information received, affiant conducted the following independent investigation:

Detective conducted surveillance on 6307 Greenwood RD and observed a subject pull into the drive and go in the home. After leaving subject was stopped for traffic violation. Upon stop subject was ran in Nplex (pseudo log system) and found to have purchased pseudo numerous times the past few days. Subject gave a statement that he sold the boxes to someone at 6307 Greenwood Road. Detectives went to 6307 Greenwood Road to talk w/subjects. Clifford Rawls invited detectives in the home. Tammy Linnig gave consent for her purse where (2) unknown pills were found. She advised she had no prescription. Clifford Rawls advised he had marijuana in his pocket (later recovered w/rolling papers). Rawls advised he did not want to sign a consent to search.

The affidavit requested permission to search for evidence of illegal drugs, naming methamphetamine and marijuana specifically. The affidavit also sought permission to search for chemicals and apparatus associated with the manufacture of methamphetamine.

Rawls moved the trial court to suppress any evidence recovered from the search. Defense counsel's motion to the trial court argued that while it was clear that a warrant had been issued, it was unclear whether the search of Rawls's home had been performed pursuant to that search warrant; and further if a warrantless search had been performed, no exception to the warrant requirement existed; but that in any event, the underlying affidavit to the warrant failed to establish probable cause because it stated no indicia of reliability, veracity, or the basis of knowledge of the relied-upon confidential informants, and that the warrant itself failed to state the items to be seized with particularity.

The hearing on the motion was dominated in large part by Rawls's confidential-informant argument. The Commonwealth objected that Rawls was not entitled to an evidentiary hearing on the confidential-informant issue and stated that it was "common knowledge" that, according to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant is not entitled to an evidentiary hearing when challenging the underlying affidavit to a search warrant unless he offers proof that the affidavit contained intentionally or recklessly false statements. Rawls's counsel responded that the motion was not based on the theory that the affidavit contained falsehoods, but rather the theory that the information contained in the affidavit did not establish the reliability of the confidential informants referenced in the affidavit, which was a necessary condition to establish probable cause to search Rawls's home. The trial court asked the parties to brief the issue and the hearing was continued to a later date. Rawls's arguments about the execution and particularity of the warrant were addressed only briefly—the Commonwealth's Attorney stated he could put on proof of the execution of the warrant, though he ultimately did not do so.

The matter was continued and referenced through a series of pre-trial hearings. Ultimately, just before trial, the trial court denied Rawls's motion. The trial court later clarified during trial that the underlying warrant could not be attacked in the manner advocated by Rawls and that the search of the home had been performed by way of a validly obtained warrant.

Now on appeal, Rawls argues that the trial court prematurely denied his suppression motion by misapplying *Franks,* and in so doing, improperly denied him an evidentiary hearing under Criminal Rule 9.78. That rule states:

If at any time before trial a defendant moves to suppress, or during trial makes timely objection to the admission of evidence consisting of ... the fruits of a search, ... the trial court shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling.

Rawls's argument to this Court poses essentially three questions: (1) Did the trial court misapply *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)? (2) If so, was he improperly denied a suppression hearing on whether the warrant lacked probable cause for failing to state the reliability, veracity, and basis of knowledge of the confidential informants referenced in the affidavit? (3) Was the warrant itself particular enough? Having carefully reviewed the record, we agree that the trial court misapplied *Franks*, but find that it did not err by failing to have an evidentiary hearing on the confidential-informant issue. We further find that aspects of Rawls's particularity argument are not preserved as presented to this Court and, without being able to address those issues, that the affidavit sufficiently established probable cause on its face.

At the outset of our analysis, we must address the applicability of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks*, the U.S. Supreme Court addressed whether a defendant may challenge the underlying affidavit to a search warrant where information in the affidavit is alleged to be false or material facts are believed to have been omitted. The Court stated:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171–72, 98 S.Ct. 2674.

In the present case, the Commonwealth argued that *Franks* was applicable to Rawls's argument that he was entitled to an evidentiary hearing on the reliability of the confidential informants. *Franks* was, in the Commonwealth's view, to be interpreted to mean that, absent a showing of intentional or reckless falsehoods, a search-warrant affidavit is wholly unassailable. But as evident from the record, Rawls never argued that the affidavit con-

tained falsehoods or material omissions; rather, he argued that the affidavit was facially invalid and as presented did not support a finding of probable cause. This argument is unlike the one addressed in *Franks* as this Court recently stated in *Minks v. Commonwealth*, 427 S.W.3d 802 (Ky.2014).

In *Minks*, the defendant argued, in part, that the affidavit supporting the warrant to search his home lacked probable cause because the affiant failed to attest to the reliability of confidential informants relied upon in the affidavit. *Id.* at 806–07. The Court addressed the necessity of an evidentiary hearing when a defendant challenges an affidavit for failing to establish probable cause on its face rather than on the basis that the affidavit contains false statements or omissions of material facts as addressed in *Franks*.

The Court observed that although the trial court in *Minks* had conducted an evidentiary hearing, such a hearing was not necessary. The Court noted that "an evidentiary hearing often is not necessary when a search is based on a warrant, the exception being where the defendant alleges that the issuing judge was presented with an affidavit containing false statements or omitting material facts." *Id.* (citing *Commonwealth v. Pride*, 302 S.W.3d 43, 49 n. 1 (Ky.2010)). We clarified:

Minks's suppression motion did not allege that the deputy who procured the warrant purposefully or recklessly included false statements in or omitted material facts from his affidavit. Instead, Minks maintained that the alleged "independent investigation" consisted of nothing more than having information from confidential informants, whose reliability was not attested to, and that the deputy's "first-hand observations while inside the trailer earlier in the day" did not include any mention of evidence of a meth lab. In essence, Minks's motion appears to be a straightforward challenge to the affidavit as insufficient within its four corners to provide probable cause to search. Under those circumstances, an evidentiary hearing is not really necessary because the trial judge is simply being asked to review the issuing magistrate's probable cause determination using a "totality of the circumstances" assessment.... Simply put, this was not one of those situations where an evidentiary hearing was required, the sole issue raised by the suppression motion being whether the facts presented were sufficient to establish probable cause. As a reviewing court, we turn our attention to whether there was a substantial basis for concluding that probable cause existed.

*Id.* at 810.

Like *Minks*, Rawls does not contest that any of the information contained in the affidavit was false. Rather, he submits that the affidavit did not sufficiently establish probable cause because there were no indicia of reliability of the confidential informants who provided information that led police to his home. Under *Minks*, however, Rawls's challenge to the affidavit amounted to no more than "a straightforward challenge to the affidavit as insufficient within its four corners," *id.* at 810, and thus he was not entitled to an evidentiary hearing on that issue.

But, as the Court noted in *Minks*, our inquiry does not stop with the determination that Rawls was not entitled to a suppression hearing. When reviewing a suppression ruling regarding a search pursuant to a warrant, an appellate court must first determine if the facts found by the trial judge are supported by substantial evidence (in those cases where an evidentiary hearing was necessary) and then determine whether the trial judge correct-

ly held that the issuing judge did or did not have a substantial basis for concluding that probable cause existed. *Id.* at 809–10 (citing RCr 9.78 and *Pride,* 302 S.W.3d at 48). Having already determined that an evidentiary hearing was unnecessary, we now turn to the question of whether the issuing judge had a substantial basis for concluding that probable cause existed.

 It is undisputed that search warrants must be supported by probable cause. *Id.* at 809–10; *see also* Ky. Const. § 10. Probable cause is judged to exist under a "totality of the circumstances," *Moore v. Commonwealth,* 159 S.W.3d 325, 329 (Ky.2005), and can be found where the facts presented in the affidavit demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A judicial officer's inquiry into the existence of probable cause must be confined to those circumstances stated in the affidavit. *Crayton v. Commonwealth,* 846 S.W.2d 684, 689 (Ky. 1992) ("It is the duty of the judicial officer to issue or deny the warrant based solely on the facts contained within the four corners of the affidavit.").

 As it is presented to this Court, we believe the issuing judge had a substantial basis for concluding that illegal substances or equipment used in the manufacture of illegal drugs would be found in Rawls's home. First, Detective McKinney was freely given evidence of drug activity in the home by Rawls and Linnig. As mentioned above, Rawls turned over marijuana and rolling papers and Linnig consented to a search of her purse leading to two unidentified pills being recovered. As in *Minks,* we agree that the detective in this case was certainly under no obligation

to abandon his investigation or accept any assertion that no other illegal activity was occurring in the home. *Id.* at 810–12.

And, second, the confidential informants utilized in the affidavit were reliable. Rawls's claim that the informants were unreliable has no merit. Although it is true that a bare anonymous tip is insufficient to establish probable cause, *Lovett v. Commonwealth,* 103 S.W.3d 72, 78 (Ky. 2003), whether a confidential informant's tip provided probable cause for the issuance of a search warrant is judged under a "totality of the circumstances" approach. *Id.* at 77 (citing *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

> While an informant's veracity, reliability, and basis of knowledge are all 'relevant considerations in the totality of the circumstances analysis,' they are not conclusive and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."

*Id.* at 77–78 (quoting *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Further, even if there is doubt as to an informant's motives "his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Illinois v. Gates,* 462 U.S. at 234, 103 S.Ct. 2317.

In the present case, although the first informant's tip was admittedly vague, and without any showing of reliability, it was more than cured by the second "informant's" tip.[1] The tip provided by the sec-

---

1. At times during trial and in briefs to this Court, there is discussion of two confidential informants. The first informant supplying the initial tip to McKinney, and the second informant being the subject of the traffic stop. Although it seems that the second informant is more akin to a citizen witness, especially considering that McKinney testified at trial

ond informant, who admitted to selling pseudoephedrine to someone at the residence, was sufficiently reliable to provide probable cause. First, the information supplied by the informant was based on his personal observation of illegal activity (i.e. he was a party to the drug transaction), which this Court has found to be an indicator of reliability. *See generally Henson v. Commonwealth*, 347 S.W.2d 546 (Ky.1961) (holding knowledge of facts gained by personal observation sufficient to establish probable cause). Second, the officer confirmed elements of the man's story by looking him up on the NPLEx system, which showed that he had recently purchased pseudoephedrine.

And, third, the informant's tip was against his penal interest, which has been held to be an indicia of an informant's reliability. *United States v. Harris*, 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search."); *see also Commonwealth v. Hubble*, 730 S.W.2d 532, 534 (Ky.App.1987) ("The fact that the information given by the [informants] was against their penal interest, is reason to accept it as truthful."). Selling pseudoephedrine when not properly licensed to do so, as the informant did by his own admission, is a crime. *See* KRS 218A.993; KRS 218A.1446; KRS 218A.1438.

From the totality of these circumstances—the reliable information from the man in the car that someone in the house had purchased pseudoephedrine in an illegal transaction and the subsequent discovery of other drugs in the house pursuant to a limited but consensual search—this Court concludes that the affidavit showed probable cause. Because the affidavit was sufficient on its face, no further inquiry into it was necessary.

Likewise this Court is unmoved by Rawls's argument that the warrant lacked particularity. In his suppression motion, Rawls made a blanket statement that the warrant lacked particularity because it did not indicate the items to be seized. This issue was discussed only briefly by the trial court. In the hearing, it is clear that defense counsel did raise that it was unclear whether the warrant was ever executed[2] and that the section of the warrant that listed the items to be seized was, in fact, blank.

Now on appeal, the main thrust of Rawls's argument to this Court is that the lack of particularity cannot be saved by incorporation of the affidavit into the search warrant as the Commonwealth suggests. It is true the Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the *persons*

that he had never met or talked to the subject before and did not consider him a confidential informant, the Commonwealth argued against Rawls's attempt to disclose his identity and moved the trial court not to disclose it, which it did not.

**2.** Though Rawls does not spend much time discussing it, he suggests, as did his trial counsel, that it is significant that the warrant may not have been executed. In fact, that is not significant. As long as the officers had a valid warrant, their search was pursuant to

the warrant, having been authorized by a neutral magistrate, and therefore was presumptively reasonable and legal. Indeed, the failure to follow the standard warrant-return procedures has repeatedly been held not to undermine the validity of the search pursuant to the warrant. *See generally Lindsay v. Commonwealth*, 500 S.W.2d 786 (Ky.1973); *Jones v. Commonwealth*, 416 S.W.2d 342 (Ky.1967); *Moore v. Commonwealth*, 206 Ky. 779, 268 S.W. 563 (1925).

*or things to be* seized." U.S. Const. amend. IV (emphasis added); *see also* Ky. Const. § 10; *Massachusetts v. Sheppard,* 468 U.S. 981, 988 n. 5, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) ("[A] warrant that fails to conform with the particularity requirement of the Fourth Amendment is unconstitutional"). But the United States Supreme Court has impliedly recognized that warrants insufficiently particular on their face can be saved when they incorporate an underlying affidavit that specifically recognizes the items to be seized. *See Groh v. Ramirez,* 540 U.S. 551, 557–58, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) ("We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.").

The incorporation doctrine has been cited approvingly by both the Court of Appeals, albeit in an unpublished decision, and the Sixth Circuit. *See Gregg v. Commonwealth,* No.2002–CA–001205–MR, 2003 WL 1408950 at *4 (Ky.App. March 21, 2003) (unpublished); *United States v. Blakeney,* 942 F.2d 1001, 1024 (6th Cir. 1991) ("A search warrant may be construed with reference to a supporting affidavit"). This Court agrees that an affidavit may be incorporated by reference into a search warrant to satisfy the particularity requirement. This Court also agrees that incorporation is accomplished with explicit incorporating language and physical attachment of the affidavit to the warrant. *See Groh,* 540 U.S. at 557–58, 124 S.Ct. 1284.

Rawls asserts to this Court that the language incorporating the affidavit was not sufficient and that the affidavit itself was not attached to the warrant. As interesting as Rawls's argument may be, the simple fact is that the warrant did, in fact, incorporate the affidavit and any claim that the affidavit was not attached to the warrant is not preserved for review by this Court.

The search warrant, in this particular case, stated "that there is probable and reasonable cause for the issuance of this Search Warrant as set out in the affidavit hereto and made a part hereof as if fully set forth herein." Other jurisdictions have found that similar language in search warrants was sufficient to incorporate the underlying documents into the search warrant for purposes of the particularity requirement. See *United States v. McGrew,* 122 F.3d 847, 849 (9th Cir.1997) (holding the language "attached affidavit which is incorporated herein" expressly incorporated the affidavit into the search warrant); *United States v. Johnson,* 541 F.2d 1311,- 1315–16 (8th Cir.1976) (holding "as described in affidavit" was sufficient language to incorporate the affidavit into the warrant); *see also United States v. Tracey,* 597 F.3d 140, 149 (3d Cir.2010) ("For an affidavit to cure a warrant's lack of particularity, the words of incorporation in the warrant must make clear that the section lacking particularities is to be read in conjunction with the attached affidavit. Merely referencing the attached affidavit somewhere in the warrant without expressly incorporating it does not suffice."). The Court is satisfied that the language in the search warrant adequately incorporated the affidavit by reference.

As to the second question, the record does not show whether the affidavit was attached,[3] and Rawls never asked the

---

**3.** The search warrant and affidavit were not included in the record in the usual manner,

trial court to make a factual finding on this issue. As this Court recently held, while "RCr 9.78 does not require the defendant affirmatively to request the trial court to make factual findings . . . [,] we do not read RCr 9.78 in a vacuum." *Helphenstine v. Commonwealth*, 423 S.W.3d 708, 714 (Ky.2014). Indeed "[a]n appellate court will not vacate a final judgment because of the failure of a trial court to make a finding of fact on an issue essential to the judgment 'unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to [CR] 52.02.'" *Id.* at 713 (citing CR 52.04).

Courts have previously held that where a trial court fails to comply with Criminal Rule 9.78, a defendant waives appellate review by declining to request more detailed findings. *Id.* at 714 (citing *Farmer v. Commonwealth*, 169 S.W.3d 50, 53 (Ky. App.2005)). Whether the affidavit was attached to the warrant is a factual question upon which Rawls's claim necessarily turns. By not requesting more detailed findings from the trial court on this point, this argument has not been preserved for our review and we decline to address it.

 Moreover, the evidentiary record is silent as to whether the affidavit was attached. This Court will not reverse the trial court on a silent record. *See Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky.1985).

To the extent that we have engaged in its review, we find the search of Rawls's home was done pursuant to a valid warrant.

### III. Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

---

such as by return of the executed warrant, as required by Criminal Rule 13.10(3), or by introduction of the warrant and accompanying affidavit at the suppression hearing. Rather, an electronic copy of the warrant and affidavit was turned over to the defense in discovery, and a copy of this electronic discovery was filed with the court. But an electronic copy does not show whether the documents were attached together. And there was no testimony about whether the affidavit was attached at the very short suppression hearing. Nevertheless, Rawls does not dispute that the warrant turned over in discovery was the one issued to McKinney, or that the affidavit was the one McKinney used to obtain the warrant.