William L. MINKS, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2012–SC–000316–MR.

Supreme Court of Kentucky.

April 17, 2014.

Shannon Renee Dupree, Assistant Public Advocate, Counsel for Appellant.

John Conway, Attorney General of Kentucky, David Bryan Abner, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

William Minks appeals as a matter of right from a judgment of the Breckinridge Circuit Court sentencing him to a twenty-year prison term for possession of a controlled substance (methamphetamine) in the first degree, possession of drug paraphernalia, manufacturing methamphetamine, and for being a second-degree persistent felony offender. Minks raises two issues on appeal. He asserts as error an issue of first impression in this Court, namely whether he was denied due process of law when the trial judge who signed the

search warrant for his residence also presided over his suppression hearing. Second, Minks claims that the search warrant was deficient because the four-corners of the affidavit upon which the warrant issued did not establish probable cause that contraband or evidence of a crime would be found at his residence. Having carefully considered both arguments, we affirm the judgment and sentence of the Breckinridge Circuit Court.

## FACTS

In March, 2011, Breckinridge County Deputy Sheriff Chris Woosley traveled to William Minks's trailer to serve an arrest warrant on Minks's brother, John. Minks answered the door, confirmed that John was inside the residence, and asked Deputy Woosley to remain outside. While there, Deputy Woosley noticed the odor of marijuana emanating from inside the trailer. Without waiting further, he entered the residence, finding John seated on the couch. When Deputy Woosley asked where the marijuana was located, John retrieved a plate of marijuana from underneath the couch and stated that it belonged to him. Deputy Woosley arrested John and asked Minks for his consent to search the trailer. Minks refused to consent, and Deputy Woosley returned to the courthouse to prepare an affidavit for a search warrant. Breckinridge Circuit Court Judge Bruce Butler signed the warrant and Deputy Woosley returned to the trailer.

Upon executing the search warrant at Minks's residence, Deputy Woosley discovered a box filled with equipment commonly used in manufacturing methamphetamine. Officers also discovered two bags with a small amount of methamphetamine in a pillow case. Minks was charged with possession of a controlled substance, possession of drug paraphernalia, manufacturing

methamphetamine, and being a persistent felony offender in the second-degree. After finding Minks guilty on all charges, the jury recommended a sentence of twenty years, and the trial court sentenced Minks accordingly.

## ANALYSIS

### I. The Trial Judge Was Not Required to Recuse Himself From Presiding Over the Suppression Hearing.

Following the indictment, Minks filed a motion to suppress the evidence recovered during the search of his residence. That same day, Minks filed a motion to transfer the case to another Breckinridge County circuit judge on the grounds that Judge Butler, who had signed the search warrant and was to preside over the suppression hearing, was potentially a witness at the hearing. After considering the motion, Judge Butler declined to transfer the case. In an order denying the motion, Judge Butler cited *Hirning v. Dooley*, 679 N.W.2d 771 (S.D.2004) as supportive of his belief that he was not required to recuse himself from the suppression hearing, despite having signed the search warrant. Judge Butler then conducted the suppression hearing and denied Minks's motion to suppress.

Minks now argues that he was denied due process of law and a fair trial when the same judge who signed the search warrant for his residence presided over the suppression hearing concerning the fruits of that search. He asserts that the Kentucky Code of Judicial Conduct prohibits this practice, as it gives rise to the "appearance of impropriety" on the part of the trial court. The Commonwealth counters that Judge Butler properly refused to recuse himself because there was no evidence that Judge Butler harbored a personal bias against Minks, had personal knowledge of disputed evidentiary facts

concerning the proceeding, or had expressed opinions concerning the merits of the proceeding.

 We apply an abuse of discretion standard in reviewing a trial judge's denial of a motion to recuse. *Hodge v. Commonwealth*, 68 S.W.3d 338, 345–46 (Ky.2001); *Sommers v. Commonwealth*, 843 S.W.2d 879, 880–82 (Ky.1992). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

 Canon 3E of the Judicial Code of Ethics, codified in Supreme Court Rule ("SCR") 4.300, provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances [where] the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" This principle is also codified in Kentucky Revised Statute (KRS) 26A.015, which requires that a judge disqualify himself or herself "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding[,]" as well as "[w]here he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." KRS 26A.015(a) and (e). "Thus, under both the statute and the Canon, recusal is proper if a judge determines that his impartiality might reasonably be questioned[.]" *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d

467, 471 (Ky.2010) (internal citations and quotations omitted).

Here, Judge Butler, in his capacity as trial court judge, was essentially asked to review whether Judge Butler, in his capacity as warrant-issuing judge, had a substantial basis for concluding that probable cause existed based on the totality of the circumstances presented within the four corners of the affidavit. As both parties have expressed, the question of whether a judge is ethically required to recuse himself under these conditions is a matter of first impression for Kentucky courts.[1] There is no claim that Judge Butler was not a detached and neutral magistrate capable of making a probable cause determination for the search warrant in the first place. *Cf. Commonwealth v. Brandenburg*, 114 S.W.3d 830 (Ky.2003); *Dixon v. Commonwealth*, 890 S.W.2d 629 (Ky.App. 1994). Rather, Minks asserts that he was deprived of due process of law when Judge Butler refused to recuse himself from the suppression hearing in which he was required to rule upon the validity of the search warrant which he had issued.

 The jurisprudential landscape concerning this question is decidedly tilted in favor of the Commonwealth's position that recusal was not required. The federal circuits that have weighed the issue agree that a judge is not disqualified from later participating in the case by virtue of the fact that he or she issued the search warrant in the case. The language of the federal statute governing disqualification, 28 U.S.C. § 455(a), is substantially similar to KRS 26A.015 and Canon 3E(1), providing that, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which

1. While a similar set of facts was presented in *Arnold v. Commonwealth*, 421 S.W.2d 366 (Ky.1967), the Court declined to address the merits because the appellant had failed to move to disqualify the trial judge based on his alleged lack of impartiality.

his impartiality might reasonably be questioned."[2]

The Sixth Circuit has held that judges need not recuse from hearing motions to suppress evidence obtained by wiretap warrants which they themselves signed, concluding that earlier participation in the same trial alone does not constitute sufficient grounds for recusal. *See United States v. Lawson,* 780 F.2d 535 (6th Cir. 1985); *United States v. Murray,* 762 F.2d 1013 (6th Cir.1985); *Southerland v. Irons,* 628 F.2d 978 (6th Cir.1980). The Eleventh Circuit has reached a similar conclusion, finding that recusal under this circumstance is not required so long as the warrant-issuing judge does not "[consider] any extrajudicial source of knowledge or [have] any personal bias or prejudice." *United States v. Slay,* 714 F.2d 1093, 1095 (11th Cir.1983). The Eighth Circuit has concluded that automatic recusal is unwarranted absent a specific showing of "personal bias on the part of any judicial officer," *United States v. Jones,* 801 F.2d 304, 312 (8th Cir.1986), but, as noted by Minks, nevertheless harbors "doubts about the practice" of allowing a warrant-issuing judge to later preside over a suppression hearing in the same case. *United States v. Alton,* 982 F.2d 285, 287 (8th Cir.1992).

Many of our sister states allow a warrant-issuing judge to preside over later proceedings in the same case.[3] The Mississippi Court of Appeals stands alone in *Brent v. State,* 929 So.2d 952 (Miss.App. 2005), having ruled that a trial judge who issued a search warrant and later reviewed the warrant during a suppression hearing was required to recuse himself despite pronouncing his impartiality. The *Brent* court held that the circumstance was inherently problematic, concluding that "[n]ot only might a reasonable person harbor doubts about the impartiality of the judge in this situation, we find that any reasonable person should have such doubts." *Id.* at 955.

■ Having carefully considered the question, we decline to adopt a rule that any judge must automatically recuse from hearing a challenge to a search warrant which he or she issued. As in other contexts, pursuant to statute and our rules governing judicial ethics, there must be evidence drawing the judge's impartiality into question before an appellate court will find abuse of discretion in the judge's refusal to recuse.

■ The process by which our courts address the issuance and review of search warrants under the Fourth Amendment was first set forth in *Beemer v. Commonwealth,* 665 S.W.2d 912 (Ky.

---

2. In *Petzold,* 303 S.W.3d at 467 this Court considered whether a judgment should be vacated following a bench trial in which grounds for the judge's recusal were discovered post-trial. This Court adopted the analysis of the United States Supreme Court in *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) regarding vacating a judgment under those circumstances, noting that "Kentucky's Court of Justice and the federal court system share virtually identical standards of judicial conduct regarding disqualification and recusal." 303 S.W.3d at 474. The *Petzold* court specifically referred to 28 U.S.C. § 455(a). While the present case presents an obviously different recusal issue, the virtual identity of the state and federal standards remains pertinent as we consider federal cases.

3. *See Hirning,* 679 N.W.2d at 781; *State v. Chamberlin,* 161 Wash.2d 30, 162 P.3d 389 (2007); *State v. Monserrate,* 125 N.C.App. 22, 479 S.E.2d 494 (1997); *Hawkins v. State,* 586 S.W.2d 465 (Tenn.1979); *State ex rel French v. Hendricks Superior Court,* 252 Ind. 213, 247 N.E.2d 519 (1969); *Waupoose v. State,* 46 Wis.2d 257, 174 N.W.2d 503 (1970); *State v. Smith,* 113 N.J.Super. 120, 273 A.2d 68 (Ct. App.Div.1971); *Irwin v. State,* 441 S.W.2d 203 (Tex.Crim.App.1968).

1984), a decision in which this Court adopted the "totality of the circumstances" standard pronounced by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the *Gates* test, the warrant-issuing judge is not required to attest to the validity of the information provided in the warrant, but rather "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. 2317. In turn, the reviewing court "ensure[s] that the [warrant-issuing judge] had a substantial basis for concluding that probable cause existed." *Id.* The process prescribed in *Gates* and adopted in *Beemer* does not, therefore, place a warrant-issuing judge or a reviewing judge in an adversarial position that would automatically draw his or her impartiality into question. *See Chamberlin,* 162 P.3d at 393–94.

■ This Court has interpreted our standards governing disqualification of a judge as requiring a showing of more than "a party's mere belief that the judge will not, afford a fair and impartial trial[.]" *Webb v. Commonwealth,* 904 S.W.2d 226, 230 (Ky.1995) (*citing Howerton v. Price,* 449 S.W.2d 746, 748 (Ky.1970)). The United States Supreme Court has stated that "opinions held by judges as a result of what they learned in earlier proceedings" are not considered examples of bias or prejudice likely to require a judge's recusal or threaten a party's due process rights. *Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Moreover, the decision to recuse is vested in the sole discretion of the judge. Mandating a rule of automatic recusal in instances where there has been no evidence of prejudice, bias, or impartiality would strip our judges of their discretion to consider each motion for recusal on a case-by-case basis.

Of course, there may be circumstances in which a judge who has issued the warrant and then presides over the suppression hearing will be disqualified by virtue of his or her impartiality being compromised. For example, the judge in the Mississippi Court of Appeals' *Brent* decision assumed an active role in establishing the validity of the search warrant, as he engaged in a prosecutorial-like questioning of a police officer during the suppression hearing. 929 So.2d at 956. The *Brent* judge thus "moved from his seat of impartiality" and "in essence fell into the realm of the prosecutor." *Id.* Certainly this kind of evidence establishes a situation in which a judge's "impartiality might reasonably be questioned" and recusal is necessary. KRS 26A.015; SCR 4.300 Canon 3E(1). In the present case there is no evidence that Judge Butler engaged in conduct that raised questions about his impartiality. Minks has failed to present any evidence to indicate that the judge harbored a personal bias, had personal knowledge of any disputed evidentiary facts concerning the suppression proceeding, or had expressed any opinions about the merits of the proceedings. *See* KRS 26A.015(2)(a). As such, we find that Judge Butler properly exercised his discretion when he declined to recuse.

## II. The Affidavit Supporting the Search Warrant Established Probable Cause.

After Minks refused to consent to a search of his home, Deputy Woosley returned to the courthouse to prepare an affidavit for a search warrant. The affidavit described Minks's residence as a "trailer situated on the property of Minks

Merchandise behind the business." The affidavit read in pertinent part as follows:

> While attempting to search [sic] a Bench Warrant on John D. Minks at the above address there was an odor of marijuana. William Minks answered the door and stated that John Minks was in the house. When affiant entered the affiant asked if there was any marijuana being smoked in the house due to the odor. John Minks pulled a glass dinner plate out from under the couch and stated that this marijuana is all there is here. Affiant asked William Minks for consent the [sic] search the residence and William stated No.

> Acting on the information received, Affiant conducted the following independent investigation:

> Affiant has been receiving information through confidential informants that there is a methamphetamine lab being operated at the above address of 236 E. Hwy 60 Hardinsburg, KY 40143.

The affidavit requested permission to search Minks's trailer, the car parked in the driveway, and Minks's person for "any and all illegal drugs and drug paraphernalia." As noted above, Minks moved unsuccessfully to suppress the evidence found at his trailer, which was located on the property behind the hardware store. Minks now contends that the affidavit accompanying the search warrant failed to provide a substantial basis for concluding that there was probable cause to search his home. Specifically, Minks argues that Deputy Woosley failed to attest in the affidavit to the reliability of the confidential informants, and that the presence of marijuana in his home did not provide a substantial basis for concluding that there

was probable cause to search it for evidence of methamphetamine production.

When faced with a motion to suppress, a trial court judge must "determine whether under the totality of the circumstances presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed." *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky.2010). As this Court noted in *Pride*, 302 S.W.3d at 49 n. 1, an evidentiary hearing often is not necessary when a search is based on a warrant, the exception being where the defendant alleges that the issuing judge was presented with an affidavit containing false statements or omitting material facts.[4]

> Ordinarily, when a search warrant has been obtained, there is no reason for an evidentiary hearing to determine whether the facts alleged in the affidavit are actually true. However, when it is alleged that police officers procuring the warrant-included intentionally or recklessly false statements or purposefully or recklessly omitted material facts, an evidentiary hearing is necessary to determine whether the allegations are true and, if so, whether probable cause exists without the corrupted facts or with the inclusion of the improperly omitted facts. *See Guth v. Commonwealth*, 29 S.W.3d 809, 810 (Ky.App.2000).

When reviewing a suppression hearing ruling regarding a search pursuant to a warrant, appellate courts must first determine if the facts found by the trial judge are supported by substantial evidence, (in those cases where an evidentiary hearing was necessary) and then determine whether the trial judge correctly held that the issuing judge did or did not have a sub-

---

4. The process for proceeding on a motion to suppress under these circumstances was outlined by the United States Supreme Court in

*Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

stantial basis for concluding that probable cause existed. Kentucky Rule of Criminal Procedure ("RCr") 9.78; *Pride,* 302 S.W.3d at 48.

■ Minks's suppression motion did not allege that the deputy who procured the warrant purposefully or recklessly included false statements in or omitted material facts from his affidavit. Instead, Minks maintained that the alleged "independent investigation" consisted of nothing more than having information from confidential informants, whose reliability was not attested to, and that the deputy's "first-hand observations while inside the trailer earlier in the day" did not include any mention of evidence of a meth lab. In essence, Minks's motion appears to be a straightforward challenge to the affidavit as insufficient within its four corners to provide probable cause to search. Under those circumstances, an evidentiary hearing is not really necessary because the trial judge is simply being asked to review the issuing magistrate's probable cause determination using a "totality of the circumstances" assessment. Gates, 462 U.S. at 230–34, 103 S.Ct. 2317; *Pride,* 302 S.W.3d at 49 n. 1. Nevertheless, the trial court held an evidentiary hearing where the facts adduced were consistent with the affidavit, the only difference being that slightly *more* information was provided at the hearing. For example, the Commonwealth established at the hearing that there were three confidential informants and that they had been reliable in the past but, of course, that information was not in the deputy's affidavit and Judge Butler did not have that information at the time he signed the search warrant. In essence, the additional facts established at the hearing were irrelevant because they were not part of the issuing judge's probable cause determination. Simply put, this was not one of those situations where an evidentiary hearing was required, the sole issue raised by the suppression motion being whether the facts presented were sufficient to establish probable cause. As a reviewing court, we turn our attention to whether there was a substantial basis for concluding that probable cause existed. *Pride,* 302 S.W.3d at 48–49.

■ It is well established that "[s]earch warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment." *United States v. Wilhelm,* 80 F.3d 116, 118 (4th Cir.1996) (*citing United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)). As previously noted, probable cause is a "practical, commonsense decision" that given all the circumstances set forth in the affidavit" there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. *See also Moore v. Commonwealth,* 159 S.W.3d 325, 329 (Ky.2005). "It is the duty of the judicial officer to issue or deny the warrant based solely on the facts contained within the four corners of the affidavit." *Crayton v. Commonwealth,* 846 S.W.2d 684, 689 (Ky.1992).

■ We believe that the facts attested to in Deputy Woosley's affidavit clearly indicate a fair probability that evidence of drug possession or other illegal drug activity would be found at Minks's residence. *See Commonwealth v. Mobley,* 160 S.W.3d 783 (Ky.2005); *Commonwealth v. Walker,* 729 S.W.2d 440 (Ky.1987). Deputy Woosley averred that he witnessed John Minks produce a plate of marijuana from the underside of Minks's couch. Certainly, the officer was under no obligation to abandon his investigation after confiscating the marijuana, nor was he required to simply take John Minks's word that no other drugs would be found in the residence. Given that Deputy Woolsey had previously

received information from more than one confidential informant about drugs (meth-amphetamine) at Minks's residence and the deputy witnessed drugs (marijuana) on the premises, the affidavit met the probable cause standard.

■ Minks argues that Deputy Woosley's confiscation of marijuana at the residence did not support a probable cause finding that evidence of methamphetamine production would be found there. This argument, as the Commonwealth notes, is misconceived. The affidavit submitted to the trial court did not articulate a specific type of drug, but rather asked for permission to search the residence for "*any and all* illegal drugs and drug paraphernalia." (emphasis supplied). Therefore, officers were free to search for *any* illegal drugs-not only marijuana or marijuana paraphernalia. As for the lack of information concerning the reliability of the informants,[5] this point simply factors into the totality of the circumstances assessment. *Lovett v. Commonwealth,* 103 S.W.3d 72 (Ky.2003) (finding that the mere fact that officer's affidavit in support of search warrant did not contain recitations as to informant's reliability and basis of knowledge was not conclusive on question of whether warrant was issued without probable cause); *see also Ragland v. Commonwealth,* 191 S.W.3d 569 (Ky.2006). Within the four corners of the affidavit, there was a sufficient basis for the issuing judge to find probable cause.

■ Finally, we are unpersuaded by Minks's argument that the incorrect number in the street address listed in the deputy's affidavit rendered the search warrant constitutionally infirm. The affidavit described the area to be searched as follows:

> Single wide trailer setting on property of Minks Merchandise behind the business. Has a gravel drive from the parking lot of the business between the buildings leading to the rear of the trailer with a wooden porch attached to the trailer at the end of the gravel drive. The trailer has a wooden porch attached to the front of the trailer as well.

A search warrant must describe the place to be searched with particularity in order to prevent law enforcement from expanding a search into areas not contemplated by the warrant. Ky. Const. § 10; *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). A reviewing court will often look at both the affidavit and the search warrant in order to determine if the description is adequate. *See Prater v. Commonwealth,* 216 Ky. 451, 287 S.W. 951 (1926). Here, Minks's trailer was described with particularity despite the wrong number in the street address.[6] This description would permit officers to identify the place to be searched with reasonable effort, and therefore, passes constitutional muster. *McCloud v. Commonwealth,* 279 S.W.3d 162, 165 (Ky.Ct.App. 2007). In sum the trial court's ruling on

---

5. In *Illinois v. Gates* the United States Supreme Court held that a confidential informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant but they are not "separate and independent requirements to be rigidly exacted in every case." 462 U.S. at 230, 103 S.Ct. 2317. So while information about a confidential informant's prior reliability would certainly add weight to the totality of the circumstances assessment, the lack of reference to such prior experience does not render the confidential informant's information un-useable. It is simply one factor to consider in the totality of the circumstances.

6. At the suppression hearing, Deputy Woosley testified that he obtained the address used on the affidavit from the arrest warrant he had served on John Minks. He found that address by conducting an internet search for the address of "Minks Merchandise."

the motion to suppress was correct as a matter of law.

### CONCLUSION

Judge Butler was not precluded, on the facts of this case, from ruling on a suppression motion addressed to a search warrant which he himself had signed. The search warrant, furthermore, was valid because under a totality of the circumstances assessment there were sufficient facts for the issuing judge to make "a practical, commonsense decision" that there was a fair probability that contraband or evidence of a crime would be found in Minks's residence. In short, there was probable cause. For these reasons, we affirm the judgment and sentence of the Breckinridge Circuit Court.

All sitting. All concur.