RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1674-MR

TAMARA JAY HALL                                                    APPELLANT


                    APPEAL FROM LAUREL CIRCUIT COURT
v.                  HONORABLE STEPHEN M. JONES, JUDGE
                    ACTION NO. 15-CI-00184


GLENAS DEWEY HALL                                                   APPELLEE

AND

NO. 2018-CA-0514-MR

TAMARA JAY HALL                                                    APPELLANT


                    APPEAL FROM LAUREL CIRCUIT COURT
v.                  HONORABLE STEPHEN M. JONES, JUDGE
                    ACTION NO. 15-CI-00184


GLENAS DEWEY HALL                                                   APPELLEE

<u>OPINION</u>
<u>AFFIRMING IN PART,</u>
<u>VACATING IN PART ,</u>
<u>AND REMANDING</u>

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE: Tamara Hall appeals from the decree of the Laurel Family Court entered in June 2016 that dissolved her marriage to Glenas Hall (Glen) and a subsequent order of the Laurel Family Court entered in May 2017 that distributed the couple's property and divided their debts. In a separate proceeding, Tamara appeals the court's order directing her to post a supersedeas bond for the full fair market value of three tracts of real property assigned by the court to Glen.

These appeals were consolidated upon our order entered in May 2020. On appeal, Tamara raises allegations of error regarding the family court's valuation of certain marital property, the distribution of marital and nonmarital property, and its division of debt. Additionally, Tamara contends that she was unfairly prejudiced by the court's order entered in June 2015 that denied her motion to recuse and its refusal to permit her more time to present her case at its final hearing. Finally, she argues that the court erred by delegating to counsel its duty to make independent findings of fact. Upon a thorough review of the record, we affirm in part, vacate in part, and remand.

Tamara and Glen married in October 1973. During the marriage, the couple established D & M Truck and Equipment Sales, Inc. (D & M). Glen bought and sold used equipment; Tamara kept the books. The couple raised two sons, Damian and Michael, and accumulated a substantial amount of real property. They separated in January 2015. Glen continued to operate D & M. Tamara petitioned the court to dissolve the marriage, and a limited decree was entered in June 2016.

Tamara and Glen owned Village Park Properties, LLC (Village Park) with Damian and Michael, who intervened in the dissolution action in order to protect their interests in the company. Tamara, Damian, and Michael purchased Glen's interest in Village Park, but its disposition is not relevant to the appeal. Significant other real property holdings (including another development project) have been liquidated and nearly all distributed.

Following a trial focused on resolution of the remaining property issues, the court rendered its findings of fact and conclusions of law. With respect to D & M, the family court valued the business at $315,000.00. There was a mortgage on the real property totaling $150,000.00. The court assigned this property -- along with the mortgage debt -- to Glen. Tamara had withdrawn $66,000.00 from the parties' PNC Bank account in January 2015; $30,000.00 from the parties' Hometown Bank account in February 2015; and $21,000.00 from the

parties' Hometown Bank account in March 2015. These sums of money were awarded to her as an offset.

Two additional tracts of real property with equity totalling $128,500.00 were also assigned to Glen. The court concluded that Tamara's interest in the real property was offset by an additional $66,000.00 that she withdrew from the parties' Hometown Bank account in January 2015.

The court awarded to Tamara two homes with an equity value of approximately $166,000.00. She was awarded the contents of the home in which she resided. Glen was awarded the contents of the home in which he resided.

The court divided equally between the parties 100 shares of Hometown Bank stock valued at $23,000.00 and a certificate of deposit valued at $2,200. The court awarded to each party Individual Retirement Account (IRA) accounts held in their respective names. It awarded to each party the life insurance policy held by each one. It also awarded vehicles to each party.

Funds remaining in an escrow account totalling $112,052.04 were divided between the parties as follows: Glen was awarded $60,000.00 off the top (offsetting Tamara's earlier distribution from the account of $62,500.00); the remainder was shared equally between them with each awarded an additional sum of approximately $26,000.00 for a total to Glen of $86,000.00. Finally, various items of personal property were awarded to each party. This appeal followed.

For our analysis, we have re-ordered Tamara's arguments on appeal. Tamara argues that the family court erred by ordering that she post a supersedeas bond in an excessive amount. She contends that provisions of the Kentucky Rules of Civil Procedure (CR) require that the bond amount "be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay." CR 73.04(3).

After Tamara filed her notice of appeal, she sought to stay enforcement of that part of the family court's judgment awarding three tracts of real property (with a total fair market value of $491,500.00) to Glen. She presented to the circuit court clerk an executed supersedeas bond in the amount of $100,000.00. Glen filed a motion objecting to the sufficiency of the bond and the surety thereon. The family court granted his motion and ordered Tamara to post a bond in the amount of $491,500.00.

CR 73.06(1) provides that the sufficiency of a bond will be determined by the trial court. Even during an appeal, the trial court retains original jurisdiction to determine all matters relating to the right to file a supersedeas bond -- including the amount and sufficiency thereof. CR 73.06(2). This court lacks authority to approve a bond. Instead, we are limited to granting leave to file a bond or to reviewing "the sufficiency of supersedeas bonds already filed in a pending appeal." *Strunk v. Lawson*, 447 S.W.3d 641, 652 (Ky. App. 2013)

(quoting *Henry Vogt Machine Co. v. Scruggs*, 769 S.W.2d 766, 767 (Ky. App. 1989)). Whether a bond amount ordered by the trial court is excessive "appears to be beyond the scope of our authority to say." *Id.* at 652. To review Tamara's allegation of error would require us to consider whether the bond amount set by the family court is excessive. We are bound by precedent holding that such review is beyond our authority. Consequently, we refrain from addressing this issue further.

Tamara argues that the family court's bifurcated decree of dissolution is void because the court failed to take testimony relevant to the residency of the parties and the irretrievable breakdown of the marriage. The express provisions of Kentucky Revised Statutes (KRS) 403.025 and 403.170 require proof of these allegations. She contends that without this statutorily required testimony, the court lacked authority to grant the decree.

The validity of a dissolution decree is not subject to appellate review. KY. CONST. § 115; KRS 22A.020(3). Consequently, we do not have authority to set aside that portion of the family court's decree dissolving a marriage. *See Kenmont Coal Co. v. Fisher*, 259 S.W.2d 480, 482 (Ky. 1953) ("Decrees of divorce are given a special sanctity in Kentucky").

In *Clements v. Harris*, 89 S.W.3d 403 (Ky. 2002), a wife appealed from a decree of dissolution claiming that the judgment was void because her husband had not satisfied the residency requirements. The Supreme Court of

Kentucky held that although the husband was not a resident of Kentucky, the decree of dissolution was valid. Thus, even where jurisdictional matters are concerned, a judgment granting a divorce will be upheld. *Lewis v. Lewis*, 224 Ky. 18, 4 S.W.2d 1106 (1928); *Weintraub v. Murphy*, 240 S.W.2d 594 (Ky. 1951). Furthermore, in her verified petition, Tamara stated that she had been resident of the Commonwealth for more than 180 days and that the marriage was irretrievably broken. The failure of the family court to take proof on jurisdictional issues such as the residency of the parties is insufficient to void the judgment. Therefore, we may not set aside the decree.

Tamara also argues that the family court abused its discretion by failing to recuse following a hearing conducted on June 6, 2015. She argued that at the hearing, there was the distinct appearance of impropriety because the judge's secretary is Glen's step-sister. In her brief, Tamara contends that the biased decisions of the court in "ruling for Glen on every possible issue" clearly demonstrate that the court was not impartial.

As Tamara has noted, we apply an abuse-of-discretion standard when we review a trial court's denial of a motion to recuse. *Adkins v. Wrightway Readymix, LLC*, 499 S.W.3d 286 (Ky. App. 2016) (citing *Minks v. Commonwealth*, 427 S.W.3d 802 (Ky. 2014)). We may reverse a trial court's decision for abuse of discretion only where the ruling was "arbitrary, unreasonable, unfair, or

unsupported by sound legal principles." *Id.* at 290 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999)).

When Tamara filed her motion, the Commonwealth's judges were bound by Kentucky's Code of Judicial Conduct. The Code of Judicial Conduct provided that a judge should recuse from deciding a case when his or her impartiality might reasonably be questioned. Supreme Court Rule 4.300, *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467 (Ky. 2010). The inquiry must be an objective one -- made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances. *Alred v. Commonwealth, Judicial Conduct Commission*, 395 S.W.3d 417 (Ky. 2012).

This principle is also codified in KRS 26A.015, which requires that a judge disqualify himself or herself "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding" as well as "[w]here he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." KRS 26A.015(2)(a) and (e). "The burden of proof required for recusal of a trial judge is an onerous one. There must be a showing of facts 'of a character calculated seriously to impair the judge's impartiality and sway his judgment.'" *Alred*, 395 S.W.3d at 430 (quoting *Stopher v. Commonwealth*, 57 S.W.3d 787, 794 (Ky. 2001)). Judges have

-8-

an obligation to decide cases except where disqualification is required. *Presbyterian Church (U.S.A) v. Edwards*, 594 S.W.3d 199 (Ky. 2018).

In *Alred*, the Supreme Court of Kentucky noted that the "intensity" of a judge's relationship with a trial participant is an important factor in assessing whether the judge's impartiality might reasonably be questioned. *Alred*, 395 S.W.3d at 429; *see also Grubb v. Smith*, 523 S.W.3d 409, 428 (Ky. 2017), *opinion modified on denial of reh'g* (Aug. 24, 2017). The Court acknowledged a range of circumstances between cases where a judge's complete unfamiliarity with a trial participant except in a judicial setting makes recusal unnecessary and cases where a judge's close personal relationship with a lawyer, a party, or a witness, such as a family member or a spouse, requires recusal. Along this spectrum are cases where a judge and a participant may have such a close relationship that a judge should disclose the relationship to attorneys and parties in a case and, if need be, recuse. *Alred*, 395 S.W.3d at 430.

The family court's order denying the motion to recuse was a comprehensive rejoinder to Tamara's allegation. The relationship identified in this case – that the judge's secretary is Glen's step-sister -- is not sufficient to cause a reasonable person to question the judge's impartiality. Moreover, Tamara's strong disagreement with the family court's findings is an insufficient basis upon which a

reasonable person could question the court's impartiality. We are satisfied that there was no error.

Tamara contends that the family court erred by refusing to give her an adequate opportunity to complete her proof. She contends that time to present her tracing evidence was unfairly cut short and that she was unable to offer an effective rebuttal case. She also challenges the court's failure to rule on her motion, filed on April 17, 2017, to reopen and to supplement the record.

By an order entered on November 18, 2016, the family court set the matter for an eight-hour final hearing be conducted to April 11, 2017, nearly five months later. Tamara does not indicate that she raised an objection to the time allotted in the months leading up to the hearing date.

At the start of its final hearing on April 11, 2017, the court reiterated that a full day had been set aside for the matter. With ten minutes remaining in the day, Tamara announced that she would need an additional two hours to present her evidence. The family court declined to extend the day, and court was adjourned.

On April 17, 2017, Tamara filed her affidavit, a flow chart, and records tracing funds that she had withdrawn from various marital accounts. Several days later, she filed documents in support of her claim for maintenance showing all the expenses that she had paid after separation and documents about which she argued that she would have testified in rebuttal.

The family court requested that Tamara produce and file in the record more bank records adequately accounting for funds that she had withdrawn from the couple's accounts. She argues that that request indicated that she needed more time to present her case. She contends that it is patently obvious that she was prejudiced by the court's unwillingness to extend its time limitation because the court erroneously credited Tamara with receiving substantially more funds than she had withdrawn and also found that Glen had paid out an inflated amount in state and federal taxes. She indicates that the court's confusion could have been "cleared up" if she had been permitted to present additional testimony.

A trial court has inherent authority and wide discretion to impose reasonable time limits for the presentation of proof. *Addison v. Addison*, 463 S.W.3d 755, 762 (Ky. 2015). We may not disturb the court's decision as long as trial time limits are neither arbitrary nor unreasonable. *Hicks v. Commonwealth*, 805 S.W.2d 144, 151 (Ky. App. 1990). A court does not err by directing parties to use court time efficiently. *Id.*

At the time of the final hearing, this matter had been pending for more than two years. Discovery had been undertaken and experts retained. It was actively litigated, generating thousands of pages of trial court record and hours and hours of hearings. Tamara had notice of the time limitations months ahead of the court date. So she had adequate time to prepare and to adapt her case to fit within

the court's time-frame. While there was an abundance of documentary evidence to present, there was relatively little live testimony. Tamara filed evidence after the conclusion of the hearing pursuant to the court's instruction, and there is nothing to suggest that the court failed to take that evidence into account. The family court did not err by limiting the time in which evidence could be presented so that the matter could be finally resolved. The time limit was neither arbitrary nor unreasonable. The family court did not abuse its discretion.

Tamara also contends that the family court erred by failing to make independent findings of fact. Characterizing the court's distribution of assets as "lop-sided," Tamara attributes the court's alleged errors to its decision to adopt Glen's proposed judgment nearly verbatim. She suggests that the court signed the tendered order without a full and thorough review of the evidence presented.

Our rules of civil procedure provide that in actions tried without a jury, the court shall find the facts specifically and state separately its conclusions of law. CR 52.01. In *Bingham v. Bingham*, 628 S.W.2d 628 (Ky. 1982), the Supreme Court of Kentucky rejected the notion that a trial court is prohibited from adopting proposed findings tendered by a party. A trial court does not err by inviting counsel to submit proposed findings of fact and conclusions of law -- and then exercising its discretion in choosing a submission. *Prater v. Cabinet for Human Res., Commonwealth of Kentucky*, 954 S.W.2d 954, 956 (Ky. 1997).

We find no basis in this case upon which to conclude that the family court abdicated to counsel its responsibility to make required findings of fact and conclusions of law. Indeed, the court made changes to the findings of fact and conclusions of law submitted by counsel to reflect its view of the evidence; it made its own division of property. It is not error for a trial court to adopt as its own findings of fact which were merely drafted by someone else. *Bingham*, 628 S.W.2d 628 at 629-30.

Tamara further contends that the family court awarded substantially more of the marital assets to Glen based upon several erroneous findings of fact. She also argues that the court erred by failing to accept her appraisal of D & M.

On appeal, we review the family court's findings of fact only to determine if they are clearly erroneous. CR 52.01. A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

Pursuant to the provisions of KRS 403.190, the family court divides marital property without regard to marital misconduct in just proportions considering all relevant factors, including: the contribution of each spouse to the acquisition of the property; the value of the property set apart to each spouse; the duration of the parties' marriage; and the economic circumstances of each spouse when the distribution of the property is to become effective. The family court's

division of the marital property may not be disturbed except for an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 522 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018).

Summarizing again the court's distribution of the property, we note that the family court awarded D & M -- along with its mortgage debt -- to Glen. Tamara's withdrawal of $66,000.00 from the parties' PNC Bank account in January 2015; $30,000.00 from the parties' Hometown Bank account in February 2015; and $21,000.00 from the parties' Hometown Bank account in March 2015 was awarded to her as an offset. Two additional tracts of real property with equity totalling $128,500.00 were also assigned to Glen. The court concluded that Tamara's interest in this real property was offset by an additional $66,000 that she withdrew from the parties' Hometown Bank account in January 2015. The court assigned to Tamara two homes with an equity value of approximately $166,000.00.

Each party was awarded the contents of the home in which he/she resided. The court also equally divided the parties bank stock and a certificate of deposit. The court awarded to each party the IRA accounts held in his/her name. It awarded to each party the life insurance policy in his/her name. It also awarded vehicles to each party. Funds held in escrow totalling $112,052.04 were divided between the parties: Glen was awarded approximately $86,000.00, and Tamara was awarded approximately $26,000.00.

-14-

Tamara contends that the family court erred by finding that she withdrew $347,978.59 from the parties' bank accounts and failed to account for it. However, accepting her assertion, we are unable to discern how it ultimately affected the family court's division of the parties' assets as summarized above. Tamara concedes that she had the benefit of $79,978.59 taken from an escrow account and that she withdrew a total of $127,000.00 from the parties' other bank accounts. She argues that she carefully accounted for those funds.

Tamara submits that the proof showed that she withdrew $66,000.00 from Hometown Bank on January 22, 2015; $30,000.00 from Hometown Bank on February 12, 2015; and $21,000.00 from Hometown Bank on March 19, 2015 (amounts which equal $117,000.00); plus $10,000.00 from Hometown Bank in January 2015 for a total of $127,000.00. In its conclusions of law, the family court determined that the equity in D & M's real property equaled $165,000.00 and that each party's share of the equity would be $82,000.00. Crediting Tamara with the $117,000.00 (that she admits she withdrew), the court awarded the entirety of the business to Glen. This division was not inequitable from Tamara's point of view. The family court's finding that Tamara failed to account for $347,978.59 -- even if erroneous -- had no prejudicial impact on the court's distribution of the parties' assets. There was no reversible error.

-15-

Tamara also contends that the family court erred by dividing the funds held in escrow totaling $112,052.04 whereby Glen received $60,000.00 off the top (offsetting Tamara's earlier payment from the account of $62,500.00) and the remainder was shared equally between them with payment of approximately $26,000.00 to each other. Tamara admits that the proof shows that she received an advance of $79,978.59 from the original amount held in escrow. She argues that the additional $62,500.00 that she received as maintenance should correctly be charged as an advance against Glen's share of the original escrow account. In light of these figures, Tamara argues that in order to achieve an even division of the escrow account, she should have been awarded $64,772.18 and Glen should have been awarded $47,279.86. Tamara concedes that the family court was not bound to divide the account equally, but she contends that the "lop-sided" division of the escrow account whereby Glen was awarded an additional $17,492.32 was inequitable and, therefore, an abuse of discretion. We disagree.

Again, assuming the family court's findings were erroneous, we conclude that the discrepancy had no discernable prejudicial impact upon the family court's distribution of the escrow account since the value of Tamara's share of the assets still exceeded Glen's at this point. There was no reversible error.

Tamara additionally argues that the family court's finding that each party had a life insurance policy valued at approximately $77,000.00 was clearly

-16-

erroneous. Instead, the evidence shows that Tamara's policy had a cash value of $54,637.96 and that Glen's had a cash value of $77,111.13. Glen submits that the error can be remedied on remand by the family court's dividing equally the value of the life insurance policies and awarding to each party $65,874.54. We agree, and we direct that the family court correct this error accordingly on remand.

Next, Tamara argues that the family court erred in its findings concerning the value of each of their IRA accounts resulting in an inequitable distribution. She contends that the proof showed that she had IRA accounts valued at $117,801.37 and that Glen had IRA accounts valued at $120,666.20. Glen submits that this error can also be remedied on remand by the family court's dividing equally the value of the IRA accounts and awarding to each party $119,233.78. We agree, and we so direct the family court on remand.

Tamara also contends that the finding of the family court that she had received $62,000.00 in maintenance was reversible error. We agree that the proof indicated that she received $62,500.00 in maintenance, but we are unable to discern how the court's slight error in her favor possibly prejudiced her. There was no reversible error.

Next, Tamara argues that the family court erred by failing to order the return of personal items that she requested. She explains that these items (including her father's chairs, bottle collection, old coins, knives, swords, and

guns) have sentimental value and that the family court's failure to order their return is inexcusable.

Tamara was awarded the contents of the home in which she resided. Additionally, Glen indicated during the court's final hearing that she could have any personal property in his possession. On remand, the family court should order the return of the items specifically identified by Tamara.

Next, we consider Tamara's contention that the family court erred by finding that Glen paid $130,000.00 in taxes. She disputes Glen's testimony and argues that records indicate that he paid less than $101,000.00. Tamara submits that the finding is not supported by substantial evidence of record and "may have contributed to the Court's inequitable division of assets. . . ." Following our review of the distribution of the parties' assets, we are not persuaded that the family court's finding concerning Glen's payment of taxes had any impact whatsoever on its division of the property. There was no reversible error.

Next, Tamara argues that the family court erred by reducing the equity in the two tracts of real property awarded to Glen by $48,000 -- the debt outstanding against them; and the equity in D & M's real property awarded to him by $150,000.00 -- the debt outstanding against it. She contends that the court erred by reducing the value of the marital estate by $198,000.00 because she received no benefit from the sums that Glen borrowed during their separation. We disagree.

-18-

As Tamara correctly notes, there is no presumption that a debt incurred during marriage is marital and subject to division. *Allison v. Allison*, 246 S.W.3d 898, 907 (Ky. App. 2008). Instead, the division of debts that arise during a marriage is based upon many factors, including: one's participation in acquiring the debt, receipt of the benefit of the debt, and the "economic circumstances of the parties" to repay the debt. *Neidlinger*, 52 S.W.3d at 523. The burden of proof regarding whether a debt is marital falls upon the party that incurred the debt. *Allison*, 246 S.W.3d at 907. We review the family court's decision regarding the division of marital debts for abuse of discretion. *Id*.

Tamara concedes that Glen's records indicate that he paid more than $100,000.00 in state and federal income taxes during 2015 and 2016 and that he paid $1,412.00 toward her property taxes in 2015. And, while Tamara disputes Glen's evidence, it indicates that that he expended $31,000.00 for the parties' health insurance costs and paid at least $1,000.00 each month toward Tamara's credit card debt. He also paid the costs of the parties' life insurance and utility bills. He paid accountant's fees, paid interest to banks of approximately $45,000.00, bought equipment, paid for advertising, and other costs associated with the business. The family court did not abuse its discretion in its division of the parties' debts. There was no reversible error.

Finally, we address Tamara's argument that the family court erred by failing to value D & M as of the date of separation since the business remained under Glen's control throughout the parties' separation. She contends that the court abused its discretion by valuing the business as of the date of distribution when it had no value beyond that of the real property.

As the Supreme Court of Kentucky has noted, valuing a business is a complex, subjective task. *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky. 2009). Consequently, we review the family court's decision to see if it "reasonably approximated" a business's value. *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky. App. 1990). Tamara argues that the family court should have accepted the appraised value of the company as provided by her expert -- $314,169.00. However, recognizing that this valuation is susceptible to legitimate criticism, she concedes that the court could have reduced this value to $214,169.00 per the testimony of Glen's accountant.

For purposes of this appeal, we can assume without deciding that the family court erred by failing to value the business as of the date of separation. Nevertheless, the court's decision not to award Tamara any portion of the value of D & M was not reversible error given its decision to award to Tamara the parties' homes with equity totaling $166,000.00  The family court's division of the marital

property does not indicate that it abused its discretion.  Thus, we find no reversible error.

Based upon the foregoing, the judgment is affirmed in part and vacated in part.  We remand for entry of an order dividing the value of the parties' life insurance policies and retirement accounts as well as the distribution of specific items of personal property claimed by Tamara in accord with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Marcia A. Smith
Corbin, Kentucky

David O. Smith
Corbin, Kentucky

BRIEF FOR APPELLEE:

Mary-Ann Smyth
Corbin, Kentucky