RENDERED: DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0089-MR

COMMONWEALTH OF KENTUCKY                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 19-CR-001640

EDWARD LACKINGTON                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND MAZE, JUDGES.

JONES, JUDGE: In June 2019, the Jefferson County Grand Jury indicted Edward

Lackington for the murder of his friend and neighbor, Steven Oerther. The

Commonwealth now appeals from the Jefferson Circuit Court's order granting

Lackington's motion to dismiss the indictment against him pursuant to KRS[1]

503.085. After a careful review of the record and the law, we affirm.

---

[1] Kentucky Revised Statutes.

# I. BACKGROUND

At the time of the incident of this case, Lackington resided in a small apartment building in Jefferson County consisting of four units. Two of these units are on the first floor, two are on the second, and both floors of the building are connected by an internal stairway with a landing. All of the residents of the building were essentially one extended family. Lackington lived in one unit, and his sister, Irene, lived in another unit with Oerther, her long-time paramour. Irene's daughter, Misty, resided in a third unit, and the fourth unit was occupied by Oerther's mother and sister.

Irene and Oerther had been romantically involved for about twenty years, but their relationship had suffered over the past year due to Oerther's alcohol and drug abuse. According to Irene, Oerther was belligerent when he drank, and he had also started smoking methamphetamine the previous September. This resulted in the couple engaging in loud arguments with increasing frequency. There is nothing in the record to indicate Oerther ever struck Irene during one of these arguments, although Misty asserted that Oerther had "put holes in the wall by her head when he's been drinking."

Oerther's relationship with Lackington had also deteriorated. Both men were approximately sixty years old and had previously been close friends. However, according to Irene, her brother had been afraid of Oerther since an

incident in April when Oerther physically attacked him. Apparently, Oerther and Irene were having an argument when Lackington showed support for his sister. Oerther taunted Lackington, asking him if he was going to go retrieve his handgun. Lackington responded by saying that he was already carrying it. Oerther told Lackington he was not afraid of the gun, then charged at Lackington and attempted to punch him. Irene then pulled Oerther away. Irene said her brother carried the gun because he was slight in stature and fearful, and the gun was his way of trying to protect himself. She also stressed that Lackington never acted in a confrontational way because he carried a gun.

On June 4, 2019, Oerther started drinking whiskey around 11:00 a.m. or noon. He argued with Irene throughout the day as she was placing household items in boxes. Irene intended to place these items in a storage unit, but Oerther believed she was preparing to move out thereby ending their relationship. The argument progressed as Oerther kept drinking. By nightfall, he had consumed what Irene described as three half-pints of whiskey, and his agitation had grown to the point where he was punching and throwing boxes inside the apartment. Oerther escalated the argument by taking Irene's car keys and her cell phone away from her.

Misty became involved in the altercation while trying to help her mother find her car keys outside; Oerther told Irene he had thrown the keys into a

ditch. When they came back inside the hallway of the building, Oerther began a tirade which included statements such as Irene was "throwing twenty years away" and that she did not love him. By this time, Oerther's anger had significantly increased, and he was yelling at Irene while in her face at close range. Misty described him as completely enraged, with a very red face, and she believed he was going to hit her mother. For her part, Irene was afraid Oerther was going to hurt Misty for intervening in the situation. Neither Irene nor Misty had ever seen Oerther angered to this degree on any previous occasion.

Misty placed herself between Oerther and Irene, continuing to argue with Oerther as Irene went outside. At this point, Oerther grabbed Misty by the shoulders and shoved her hard to one side. Misty stated that Oerther did not hit her with a fist, but "knocked [her] out of the way." She said she fell backward and sideways but did not fall to the ground. Because of the shove, she was not facing in the correct direction to view what happened next, but she believed Oerther was "going after" Lackington, who had appeared on the landing at the top of the stairs. A single shot rang out, and Oerther fell near the foot of the stairs with a gunshot wound in his chest. Despite Misty and Irene's attempt to stanch the bleeding and perform chest compressions, Oerther died at the scene.

Lackington told police he came to the stairway because he heard the altercation and was afraid Oerther was going to hurt his sister or his niece.

However, when Oerther began to charge at him with a look of drunken rage, he feared for his own life. Lackington said Oerther was the sort of person who slaps people and pushes them around, referring to the incident in April when Oerther had attacked him. Lackington also described the significant size difference between the two men. Lackington was about five feet six inches tall and weighed about one hundred fifty pounds, while Oerther was about six feet tall, weighed about one hundred eighty-five pounds or more, and was very muscular. Lackington was emphatic about how he was disabled and that Oerther could have "killed [him] in one or two hits."[2] Finally, Lackington told police he did not want to kill Oerther, he "just wanted him to stop."

After conducting interviews with Irene, Misty, and Lackington, police investigators arrested Lackington for murder. They told Lackington that there were inconsistencies in his account that made them disbelieve his assertions regarding self-defense or protection of others. First, they pointed out that Lackington's initial statement, in front of the police and Irene, was that he was trying to shoot Oerther in the arm, and this differed from his later statement that he did not have time to aim before he shot. Lackington explained that he did not want

---

[2] The exact nature of Lackington's disability is not entirely clear. During his police interview, Lackington described himself as being in generally poor health, suffering from clogged arteries, blood clots, and a bilateral pulmonary embolism. Later, at the August 13, 2020 hearing, Lackington's counsel argued to the court that Lackington suffers from heart problems and strokes.

his sister to think he was trying to kill her boyfriend when he shot him. The investigators also pointed out that Lackington said Oerther pushed Misty to the ground, but this was contradicted by Misty herself, who said she never actually fell to the ground when Oerther shoved her. The investigators also asserted that Lackington made inconsistent statements about whether he was afraid for Misty and Irene or for himself, as well as whether he shot Oerther when he was one step down from the landing or two or three steps down.

One week after the shooting, the Jefferson County Grand Jury indicted Lackington on a single count of murder. Following his arraignment, Lackington filed a pretrial motion to dismiss the indictment pursuant to KRS 503.085, asserting he was immune to prosecution because he was justifiably acting in self-defense or in the defense of others when he fired the shot that killed Oerther. The Commonwealth responded to the motion, arguing that Lackington was not entitled to immunity because there was probable cause to conclude the use of force was unlawful in his case. As support, the Commonwealth argued that Oerther was unarmed, Lackington's use of deadly force was excessive, and Lackington made inconsistent statements.

The trial court conducted a hearing on the motion on August 13, 2020. In addition, the evidence included the three eyewitness statements, the autopsy report, investigative letters, and police body camera videos. A few months after

-6-

the hearing, the trial court granted Lackington's motion to dismiss based on its conclusion that "<u>there is not probable cause to conclude that the force used by the defendant was unlawful</u>." (Record (R.) at 75.) This appeal followed.

## II. STANDARD OF REVIEW

KRS 503.085 grants civil and criminal immunity to those who justifiably use force as permitted in KRS 503.050, 503.055, 503.070, and 503.080, which includes self-defense or in defense of another. *Rodgers v. Commonwealth*, 285 S.W.3d 740, 752-53 (Ky. 2009). As noted in *Rodgers*, KRS 503.085 itself gives little guidance as to how to apply its version of immunity. 285 S.W.3d at 753. Ultimately, "[the Kentucky Supreme Court] concluded that, at each step of the criminal prosecution – defined as arresting, detaining, charging, or prosecuting – there must be 'probable cause to conclude that the force used [by the defendant] was not legally justified,' or the case must be dismissed." *Commonwealth v. Lemons*, 437 S.W.3d 708, 714 (Ky. 2014) (quoting *Rodgers*, 285 S.W.3d at 754).

Because the claim of immunity in this case turns upon a probable cause determination, we must pay special attention to the role of the trial court in determining probable cause as well as the role of a court such as ours, which sits in review. "Probable cause has . . . been defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Lemons*, 437 S.W.3d at 715 (internal quotation marks and citations omitted). In its keystone

-7-

opinion on the subject, the United States Supreme Court ruled that probable cause must not be considered in a "hypertechnical" way; instead, a trial court should use its common sense to consider the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 236-38, 103 S. Ct. 2317, 2331-32, 76 L. Ed. 2d 527 (1983). "Probable cause is a relatively low standard based on the 'practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Commonwealth v. Bennett*, 553 S.W.3d 268, 271 (Ky. App. 2018) (quoting *Gates*, 462 U.S. at 241, 103 S. Ct. at 2333).

Our role as an appellate court is relatively constrained because a trial court's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331. The Kentucky Supreme Court has held that "[*de novo* review] is not appropriate . . . in a determination of probable cause in a self-defense/defense of others immunity case." *Lemons*, 437 S.W.3d at 715. Rather, "[o]n appellate review, this Court must establish whether the trial court, after using a totality-of-the-circumstances analysis, had a substantial basis for finding probable cause." *Bennett*, 553 S.W.3d at 270 (citing *Lemons*, 437 S.W.3d at 715).

### III. ANALYSIS

For its sole issue on appeal, the Commonwealth contends the trial court in this case erroneously granted immunity and dismissed Lackington's

-8-

indictment. The Commonwealth first argues that it "has no way of knowing why the decision was made" in this case, because the trial court did not make specific findings of fact regarding the discovery presented to it. (Appellant's Brief at 3.) Nevertheless, the Commonwealth argues that it overcame the relatively low probable cause standard of showing Lackington's use of deadly force was unlawful "by providing substantial evidence of imperfect self-defense or the existence of conflicting evidence in the record to show potential unlawful conduct." (Appellant's Brief at 4 (quoting *Bennett*, 533 S.W.3d at 271)).

The findings of fact are notably scant in this case. The trial court's order lists the evidence it considered, including the witness interviews, police investigative letters, and body camera videos. The trial court then considered KRS 503.085, its associated statutes, and the case law before stating:

> Here, considering all of the circumstances known, <u>this Court finds that there is not probable cause to conclude that the force used by the defendant was unlawful</u>. The evidence and arguments presented to this Court portray tragic circumstances. While those circumstances resulted in the regrettable death of an individual, the defendant's actions were justifiable under the law, as there is not probable cause to conclude that the defendant's belief that the force used was necessary to protect a third person (here, possibly more than one person) and himself against serious physical injury was unreasonable.

(R. at 75.)

Because the trial court did not elaborate on its analysis of the facts, the Commonwealth requests that we remand the case for additional findings, as one alternative form of relief. However, Lackington has correctly pointed out that the Commonwealth has waived this argument by its failure to request additional findings after the trial court issued its written judgment. "A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02." CR[3] 52.04. This civil rule applies in criminal cases pursuant to RCr[4] 13.04; *see Helphenstine v. Commonwealth*, 423 S.W.3d 708, 713 (Ky. 2014). Accordingly, it would not be appropriate in this case to reverse and remand for additional factual findings.

In a review on the merits, a determination of whether the trial court correctly dismissed the indictment under these circumstances is deceptively difficult. A glance at our case law reveals that most motions arguing for immunity pursuant to KRS 503.085 do not succeed at the trial court level. This is not surprising, given that the Commonwealth must only show "probable cause to conclude that the force used . . . was not legally justified," which is a low threshold

---

[3]  Kentucky Rules of Civil Procedure.

[4]  Kentucky Rules of Criminal Procedure.

to clear. *Lemons*, 437 S.W.3d at 714 (quoting *Rodgers*, 285 S.W.3d at 754). The

single case which appears to be most on point is *Commonwealth v. Bennett*, 553

S.W.3d 268 (Ky. App. 2018), in which the trial court *granted* immunity. This

Court reversed and remanded with instructions to reinstate the charges in that case.

However, *Bennett* is distinguishable because the trial court granted immunity on

the basis of "inconsistent and ambiguous" evidence. *Id*. at 272.

In *Bennett*, each party relied on its own interpretation of a video

which was "of poor quality and lack[ed] audio." *Id*. at 269. We noted that the

video, and the evidence as a whole, was "unclear and conflicting" as to whether

Bennett "'provoke[d] the use of physical force' or 'was the initial aggressor[,]'"

which would preclude self-defense immunity. *Id*. at 272 (quoting KRS

503.060(2)-(3)). We also noted that our Supreme Court has previously found that

"'conflicting evidence as to whether [the] use of deadly force was justified'

supports the preclusion of a pretrial finding of immunity." *Id*. (quoting *Rodgers*,

285 S.W.3d at 754). The fact that the evidence was conflicting and uncertain

rendered the trial court's grant of immunity untenable. Based on these

considerations, we held the trial court applied the wrong legal standard when it

determined Bennett was justified in using physical force; instead, the trial court

should have determined "if probable cause exist[ed] to suggest Bennett's act of

shooting was an unlawful use of force." *Id*. at 273.

Here, unlike in *Bennett*, the evidence is much more straightforward. It is uncontroverted that Oerther was intoxicated, agitated, and belligerent to the point of physical violence. Misty and Lackington both assert that Oerther charged at Lackington after shoving Misty. There was also the previous incident in April, attested to by both Irene and Lackington, in which Oerther physically attacked Lackington; this shows that Lackington had a reasonable belief that Oerther would attack him again. The Commonwealth attempts to show probable cause of unlawful force by stressing particular inconsistencies in Lackington's accounts of what happened. However, we fail to discern anything material about whether Misty hit the floor when Oerther shoved her, in Lackington's account, or if she was merely "knocked . . . out of the way," as she related. Likewise, we fail to see how varying accounts of where Lackington was standing when Oerther charged him should affect the probable cause analysis. Lackington's initial claim that he was attempting to shoot Oerther in the arm gives us pause, but on the balance, we do not believe this alleged inconsistency is material. In fact, it could be true that Lackington intended to shoot Oerther in the arm but did not have time to aim properly.

The relevant question is whether there is probable cause of an unlawful use of force. After considering all of the evidence, the trial court determined there was not, and we give "great deference" to a trial court's probable

-12-

cause determination. *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331. Despite the Commonwealth's attempt to point to contradictions in the statements which would preclude a pretrial finding of immunity, the asserted inconsistencies are simply not germane to the trial court's probable cause determination. At best, the Commonwealth points to inconsistencies which could cause *suspicion*. As we have previously noted, however, probable cause must be "supported by . . . more than mere suspicion." *Lemons*, 437 S.W.3d at 715 (citations omitted).

Finally, despite the Commonwealth's arguments, we do not consider the fact that Oerther was unarmed requires reversal. "[D]eadly physical force is justifiable only when the defendant believes he is in danger of death or serious physical injury." *Bennett*, 553 S.W.3d at 271 (citing KRS 503.050(2)). "'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(17); *see Anderson v. Commonwealth*, 352 S.W.3d 577, 581 (Ky. 2011). Despite both men being near sixty years of age, the evidence reflects that Oerther was significantly larger and more physically fit than the relatively frail Lackington. The trial court determined that Lackington's use of force was necessary to protect himself against serious physical injury, and we see no reason to disturb that conclusion.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's order granting Lackington's motion to dismiss.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Jeanne Anderson
Special Assistant Attorney General
Louisville, Kentucky

BRIEF FOR APPELLEE:

Joshua M. Reho
Louisville, Kentucky